UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMELI KWASI A.,<br><br>Petitioner,<br><br>v.<br><br>RONALD P. EDWARDS, et al.,<br><br>Respondents. | Civil Action No. 18-15029 (SRC)<br><br>OPINION |

## I. INTRODUCTION

This matter has been opened to the Court by Petitioner's filing of a habeas petition challenging his prolonged detention. For the reasons explained in this Opinion, the Court finds that due process requires that Petitioner be provided an individualized bond hearing at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of 8 U.S.C. 1226(c).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Ghana. (*See* Ex. A, Notice to Appear.) He was admitted to the United States on July 17, 1998 as a legal permanent resident. *See id.*

Petitioner was detained on August 6, 2015 by the New York Fugitive Operations Team during a field operation. (*See* Ex. C, Form I-213 Record of Deportable/Inadmissible Alien.) His detention was authorized pursuant to 8 U.S.C. § 1226(c) due to his criminal history. (*See* Ex. D, Form I-830.) The same day Petitioner was served with a Notice to Appear ("NTA") charging him with removability pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality

Act. (*See* Ex. A.) The NTA was later amended to include an additional charge under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act and included additional factual allegations. (*See* Ex. E, March 16, 2016 DHS Proffer of Evidence.)

On January 26, 2016, Petitioner received a bond hearing pursuant to the Second Circuit's decision in *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) ("the Lora Hearing"). At the conclusion of the *Lora* Hearing, the immigration judge found that ICE had met its burden of proof that Petitioner is both a danger to the community and a flight risk. The immigration judge's decision was memorialized in a memorandum decision issued on March 1, 2016. (*See* Ex. F, March 1, 2016 Memorandum Decision of the Immigration Judge.) Petitioner appealed the immigration judge's denial of bond to the Board of Immigration Appeals ("BIA"). On June 7, 2016, the BIA dismissed Petitioner's appeal and affirmed the immigration judge's decision. (*See* Ex. G, June 7, 2016 BIA Decision.)

On June 30, 2016, the immigration court held an individual hearing on Petitioner's withholding of removal, protection under the U.N. Convention Against Torture, and cancellation of removal applications for relief. At the conclusion of testimony, the immigration court denied Petitioner's applications for relief. (*See* Ex. H, June 30, 2016 Immigration Judge Decision.)

Petitioner filed an untimely appeal of the immigration judge's decision to the BIA and requested a stay of removal proceedings during the pendency of his appeal. On October 31, 2016, the BIA denied Petitioner's request for a stay of removal. (*See* Ex. I, October 31, 2016 BIA Decision.) On January 18, 2018, the BIA issued a decision dismissing Petitioner's appeal and affirmed the immigration judge's denial of Petitioner's applications for relief. (*See* Ex. J, January 18, 2018 BIA Decision.) At that time, the authority for Petitioner's custody changed from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1231 as his removal became administratively final upon

BIA's dismissal. Petitioner subsequently filed a motion to reopen his proceedings before the immigration court. On May 3, 2018, an immigration judge issued a decision dismissing Petitioner's motion to reopen. (*See* Ex. K, May 3, 2018 Immigration Judge Decision).

Petitioner filed a Petition for Review in the Second Circuit under docket number 18-204. Petitioner also filed a motion for a stay with the Second Circuit on September 3, 2018.

Petitioner filed the instant habeas petition on October 16, 2018, arguing that he is entitled to a bond hearing under the Third Circuit's decision in *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 226 (3d Cir. 2018) in light of the fact that he has been subject to detention pursuant to 8 U.S.C. § 1231(a)(6) and has been detained for more than six months. Petitioner additionally asserts that his continued detention under §1226(c) without a bond hearing, in the event he would be granted a stay, violates his due process rights. (ECF No. 1.) On November 2, 2018, the Court directed the government to answer the Petition. (ECF No. 3.)

Prior to the Answer, on November 29, 2018, Petitioner was afforded a bond hearing ("the *Guerrero-Sanchez* Hearing"). The Immigration Judge found that Petitioner was a danger to the community. (*See* Ex. M, Audio Transcription of November 29, 2018 Bond Hearing at 55:56:4.) Petitioner's counsel reserved appeal of the Immigration Judge's decision. (*See id.* at 56:3-9.)

On December 17, 2018, the government sought summary dismissal of the instant habeas matter in lieu of an answer because Petitioner had been provided with a bond hearing pursuant to *Guerrero-Sanchez*. Petitioner's counsel opposed dismissal, arguing that the hearing had not provided Petitioner with the constitutional protections required by *Guerrero-Sanchez*. (ECF Nos. 10-12.)

On January 4, 2019, the Second Circuit granted Petitioner a stay of removal. (*See* Ex. O, Jan. 4, 2019 Order.)

On January 7, 2019, the Court denied without prejudice the government's request for summary dismissal, and directed the government to file a full answer to the Petition. (ECF No. 13.) The government filed its response on January 15, 2019, and Petition submitted his reply on February 14, 2019. (ECF Nos. 14-15.)

On March 8, 2019, after the matter was briefed, Petitioner's counsel filed a motion by consent to substitute Warden Alfaro Ortiz as a Respondent, based on Petitioner's recent transfer to from Hudson County Correctional Facility to Essex County Correctional Facility. (ECF No. 16.) On April 23, 2019, Petitioner's counsel wrote to the Court to advise that Petitioner had been transferred to a detention facility in Gadsden, Alabama, and requested that the Court direct Respondents to transfer Petitioner back to Hudson County Correctional Facility in New Jersey where he could have access to his attorneys. Respondents opposed this request. On May 1, 2019, Petitioner's counsel wrote again to the Court to advise that Petitioner was transferred to Jena, Louisiana, and back to Gadsden, Alabama, and asked the Court to order that Petitioner be returned to the New York City area. (*See* ECF Nos. 17-20.)

On May 9, 2019, Petitioner's counsel wrote to advise the Court that the BIA issued an Order on May 3, 2019, remanding the appeal of the November 29, 2018 denial of bond to the Immigration Judge because "neither the bond order nor the Immigration Judge's statement in the transcript adequately explain the reasons for the decision." (*See* ECF Nos. 20; 21-1, May 3, 2019 Order of BIA.)

### III. ANALYSIS

The parties appear to agree that Petitioner is considered to be in "pre-order removal immigration detention" because he has been granted a stay of removal by the Second Circuit, and his petition for review is ongoing. *See Leslie v. Att'y Gen.*, 678 F.3d 265, 268-270 (3d Cir.

2012.) Therefore, Petitioner is currently subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).[1] At issue is whether Petitioner's nearly four-year detention has become unreasonably prolonged.

The Supreme Court first considered the constitutionality of prolonged detention pursuant to § 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003). There, the Court determined that the statute was facially constitutional as "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In reaching this conclusion, the Court noted that in most cases detention under the statute lasted only a month and a half and that even in cases where an appeal was taken to the Board of Immigration Appeals ("BIA"), detention pursuant to § 1226(c) lasted an average of four months, indicating that detention under the statute was often brief and had a defined beginning and end point at the conclusion of removal proceedings. *Id.* at 529. Because the Court found the statute constitutional, it rejected Petitioner's challenge even though Petitioner had spent a period of approximately six months in detention. *Id.* at 530. Thus, after *Demore* it was clear that detention for less than six months was insufficient to support an as-applied challenge to detention under the statute.

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), the Third Circuit considered whether a petitioner was entitled to a bond hearing nearly three years into his detention under § 1226(c). *Id.* at 223–26. The Third Circuit held that he was, notwithstanding that provision's

---

[1] Congress in § 1226(c) defined certain categories of aliens for whom detention is mandatory and release is authorized only in narrow circumstances. Under § 1226(c), "[t]he Attorney General shall take into custody any alien" who is inadmissible or deportable on the basis of enumerated categories of crimes and terrorist activities. 8 U.S.C. § 1226(c)(1). By its terms, § 1226(c) does not entitle detainees to a bond hearing. Release is authorized "only if the Attorney General decides ... that release of the alien from custody is necessary" for witness-protection purposes "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2).

lack of any such requirement. "[W]hen detention becomes unreasonable," the court reasoned, "the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. The Third Circuit emphasized that Supreme Court's decision in *Demore* emphasized that "mandatory detention pursuant to § 1226(c) lasts only for a 'very limited time' in the vast majority of cases," and concluded that the result in *Demore* "may well have been different" if the petitioner's detention had been "significantly longer than the average." *Diop*, 656 F.3d at 233–34 (quoting *Demore*, 538 U.S. at 529 & n.12). The Third Circuit thus interpreted § 1226(c) to "contain[ ] an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length." *Id.* at 235. Beyond that point—which can be determined only by a "fact-dependent inquiry," *id.* at 233—the statute "yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose," *id.* at 235. The circuit court's interpretation of § 1226(c) relied in part on *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the Supreme Court "read an implicit limitation into" 8 U.S.C. § 1231(a)(6) – which governs detention of aliens who have already been ordered removed – so that it "d[id] not permit indefinite detention." *Id.* at 689.

The Third Circuit again applied *Diop's* reasonableness requirement in *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015). There, the court held that because the petitioner's year-long detention under § 1226(c) had become unreasonable, he was entitled to a bond hearing where the government would bear the burden of "produc[ing] individualized evidence that Chavez–Alvarez's continued detention was or is necessary." *Chavez-Alvarez*, 783 F.3d at 474, 478. As in *Diop*, that conclusion resulted from the Third Circuit's "use of a

balancing framework [that] makes any determination on reasonableness highly fact-specific." *Id.* at 474.

Last term, however, the Supreme Court overruled *Diop's* statutory interpretation of 8 U.S.C. § 1226(c). In *Jennings v. Rodriguez*, — U.S. —, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018), the Court rejected the conclusion that § 1226(c) contains an implicit reasonableness limitation. *Id.* at 846–47. The Court noted that in *Demore*, it distinguished § 1226(c) from § 1231(a)(6) (the statute at issue in *Zadvydas*). *See Jennings*, 138 S.Ct. at 846. While detention under § 1231(a)(6) lacks a "definite termination point," § 1226(c) authorizes detention only until the conclusion of removal proceedings. *Id.* (quoting *Demore*, 538 U.S. at 529, 123 S.Ct. 1708). The Court held in *Jennings* that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings only if the alien is released for witness-protection purposes." *Id.* at 847 (emphasis added) (internal quotation marks omitted).

Relying on *Jennings*, the government argues that Petitioner is not statutorily entitled to a bond hearing. (*See* ECF No. 14, Answer at 15-16.) As the government appears to acknowledge, *Jennings* did not address the constitutionality of § 1226(c), instead remanding to the Ninth Circuit to decide that question in the first instance. *Id.* at 851. The Third Circuit recently held that "*Jennings* did not call into question our constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long." *See Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 277–78 (2018).

The government asserts that due process requires a bond hearing under §1226(c) only in rare or exceptional cases. The constitutional holdings of *Diop* and *Chavez-Alvarez* call for a "fact-dependent inquiry requiring an assessment of all of the circumstances of any given case,"

to determine whether detention without an individualized hearing is unreasonable. *Diop*, 656 F.3d at 234; *see also Chavez–Alvarez*, 783 F.3d at 475 n. 7 (explaining "the highly fact-specific nature" of the balancing framework). Under this approach, every detainee must file a habeas petition challenging detention, and the district courts must then adjudicate the petition to determine whether the individual's detention has crossed the "reasonableness" threshold, thus entitling him or her to a bail hearing.

The reasonableness of detention depends on the facts of the detainee's individual case. *See Diop*, 656 F.3d at 232–33 (noting that the inquiry into whether detention has become unreasonable "will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances" and "declin[ing] to establish a universal point at which detention will always be considered unreasonable"). At the point the detention becomes unreasonable under the facts of the case, the Third Circuit shifts the burden of proof from the petitioner to the government. *See Diop*, 656 F.3d at 233. The Third Circuit ruled that there must be a bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.*

Looking to the outer limit of reasonableness, the Third Circuit held in *Chavez Alvarez* that, in the absence of bad faith by the criminal alien,[2] his or her detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case. *See Chavez–Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015) ("[B]eginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time [the alien] had been detained for one year, the burdens to [the alien's] liberties

---

[2] *See id.* ("An argument could be made that aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute.")

outweighed any justification for ... detain[ing] him without bond to further the goals of the statute.").

When assessing the reasonableness of detention under § 1226(c) and determining when the tipping point has been reached, courts should also consider the reasonableness of the Government's conduct and the bona fides of the detainee's challenge to his or her removal. *Id.* at 477 Finally, as the length of detention grows, the Court should also consider whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. *See Chavez-Alvarez*, 783 F.3d at 478 (explaining "we cannot ignore the conditions of confinement. Chavez–Alvarez is being held in detention at the York County Prison with those serving terms of imprisonment as a penalty for their crimes. Among our concerns about deprivations to liberties brought about by section 1226(c) is the reality that merely calling a confinement "civil detention" does not, of itself, meaningfully differentiate it from penal measures. . . . As the length of the detention grows, the weight given to this aspect of his detention increases.").

The government also argues that Petitioner is not entitled to a bond hearing because he has received two bond hearings during his nearly four-year detention. With respect to the *Guerrero-Sanchez* Hearing, Petitioner was detained under § 1231(a)(6), not § 1226(c), at the time of that recent hearing. *See Leslie*, 678 F.3d at 270 (detention under the two statutes [i.e., §1226(c) and § 1231(a)(6) is governed by different standards"). Furthermore, the BIA has determined that the statement of reasons provided by the IJ during the *Guerrero-Sanchez* Hearing was inadequate and has remanded the matter to the IJ for issuance of a bond memorandum, albeit without a deadline for completion. For these reasons, the Court declines to consider whether the *Guerrero-Sanchez* Hearing afforded Petitioner due process, and likewise

does not consider the *Guerrero-Sanchez* hearing for purposes of determining whether Petitioner has shown that he is entitled to a bond hearing under § 1226(c), which is a different statute and is governed by different standards.

The government also argues that Petitioner received a *Lora* Hearing in January 2016, approximately six months after he was detained by ICE. Petitioner has now been detained for a total of three years and eleven months, and his last individualized bond hearing under § 1226(c) was nearly three-and-a-half years ago. His detention now exceeds the 35 months that the Third Circuit found prolonged in *Diop*, 656 F.3d at 234, and is nearing the four year of detention in *Leslie*, 678 F.3d at 270, and his case may continue for years. (*See* ECF No. 15, Reply at 7-10).

Furthermore, there is no evidence that Petitioner is challenging his removal in bad faith; indeed, a stay of removal was issued by the Second Circuit Court of Appeals in connection with his petition for review. Finally, Petitioner argues, and the government does not dispute, that Petitioner has been held in the county jails of New Jersey and other out-of-state detention facilities under conditions similar to those used to house serious criminals. (*See* ECF No. 15, Reply at 6.)

Given these factual circumstances, the Court finds that due process requires that Petitioner be provided an individualized bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *See Diop*, 656 F.3d at 233.[3]

---

[3] In his reply, Petitioner's counsel also argues that the government should be required to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence. The Court notes that at least one court in this District has observed that although *Chavez-Alvarez* and *Diop* place the burden on the government, these decisions do not explicitly require the use of the clear and convincing standard, and has declined to require the immigration judge to apply that standard. *See K.A. v. Green*, 2018 WL 6003541, at *1 (D.N.J. Nov. 14, 2018) (denying reconsideration). Here, although Petitioner asserts in the Petition that his continued

Finally, the Court will deny <u>without prejudice</u> the consent motion to substitute Warden Alfaro Ortiz as a Respondent, based on Petitioner's recent transfer to from Hudson County Correctional Facility to Essex County Correctional Facility (ECF No. 16), as it is not clear whether Petitioner is currently housed at Essex County Correctional Facility. Within 7 days of the Order accompanying this Opinion, Respondents shall provide Petitioner's Counsel and the Court with an updated address for Petitioner so that Petitioner may substitute the proper Respondent and the Clerk of the Court may serve a copy of this Opinion and accompanying Order on the Warden of the facility where Petitioner is currently detained.

## IV. <u>CONCLUSION</u>

For the reasons explained in this Opinion, the Court finds that due process requires that Petitioner be provided an individualized bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention

---

detention without a bond hearing under § 1226(c) violates the constitution and seeks a bond hearing under § 1226(c), the Petition does not ask the Court to determine the standard of proof for bond hearing held under §1226(c). Indeed, Petitioner has raised this issue for the first time in reply and neither party has had adequate opportunity to brief the issue. The Court declines to address the precise quantum of proof for § 1226(c) bond hearings where it was not raised in the Petition or an Amended Petition and raised for the first time in reply. *See Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010) (vacating an order granting summary judgment wherein the District Court accepted an argument that was raised for the first time in a reply brief as being dispositive of claims, because there was no meaningful opportunity to present arguments or evidence in opposition to the decisive issue); *see also Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 550 n.10 (D.N.J. 2001) (holding that it is improper to raise arguments for the first time in reply papers).

Similarly, in letters to the Court, Petitioner's counsel asks the Court to have him returned to the New York City area for the remainder of his immigration proceedings and to enjoin Respondents from transferring him during his immigration proceedings. The transfer issue was likewise not asserted in the Petition or an Amended Petition, and Petitioner has not provided any legal authority for habeas court to order the government to detain immigration detainee in a particular location or enjoin the detainee's transfer. For these reasons, the Court declines to address the transfer issue in the instant Opinion. *See id.*

statute." See *Diop*, 656 F.3d at 233. Respondents shall provide Petitioner with the bond hearing within 7 days of the date of the Order accompanying this Opinion. Within 7 days of the Order accompanying this Opinion, Respondents shall also provide Petitioner's counsel and the Court with an updated address for Petitioner so that Petitioner may substitute the proper Respondent and the Clerk of the Court may serve a copy of this Opinion on the Warden of the facility where Petitioner is currently detained. An appropriate Order follows.

STANLEY R. CHESLER, U.S.D.J.

DATED: 7/12/19